Leroy C. GIPSON, Jr., Appellant,

v.

**NEW JERSEY, SUPREME COURT et al.**

No. 76–2258.

United States Court of Appeals, Third Circuit.

Argued June 17, 1977.

Decided July 19, 1977.

---

Haines, Schulze, Wood & Tapper, Mount Holly, N. J., for appellant; Martin L. Haines, of counsel.

William F. Hyland, Atty. Gen., Trenton, N. J., for appellees; Stephen Skillman, Asst. Atty. Gen., of counsel, Erminie L. Conley, Deputy Atty. Gen., Trenton, N. J., on brief.

Before VAN DUSEN, ADAMS and GIBBONS, Circuit Judges.

## OPINION OF THE COURT

### PER CURIAM:

The issue for resolution here is whether the district court erred in refusing to intervene in a pending state bar disciplinary proceeding.

## I.

This appeal arises out of litigation in which Leroy Gipson, Jr., a member of the bar of the State of New Jersey who is under temporary suspension on account of alleged ethical violations, sought to have the district court lift his suspension and declare New Jersey's system of attorney discipline unconstitutional.[1]

As a result of numerous complaints alleging that Mr. Gipson had failed to deal properly with and to account for client funds, the Union County Ethics Committee issued a complaint against him on December 4, 1974. Although state disciplinary rules provide that an answer must be filed within ten days, Mr. Gipson did not respond until February, 1975. His answer admitted some of the allegations but denied any deliberate wrongdoing.

On June 4, 1975, the Committee, pursuant to its investigatory powers, served a subpoena duces tecum on Mr. Gipson requiring his presence at a hearing on June 18, 1975, and ordering the production of financial documents for a period stretching from January, 1970 to June, 1975. The hearing was postponed until June 26, 1975, at which time Mr. Gipson appeared without an attorney and without the requested documents. A further adjournment was granted in order to enable Mr. Gipson to retain counsel.

When a lawyer was obtained, Mr. Gipson requested a change of venue, charging that previous disciplinary actions concerning him had biased the Union County Committee. This request was denied. Mr. Gipson then filed a similar request for a change of venue with the New Jersey Supreme Court. Chief Justice Hughes directed that a formal motion be made before the Union County Committee. This was done, and after several affidavits were filed on behalf of the Committee, the motion for a change of venue was denied on September 9, 1975. The Supreme Court then issued a rule to show cause on Mr. Gipson concerning compliance

---

1. The gravamen of Mr. Gipson's constitutional argument appears to be that the New Jersey disciplinary rules are not consistent with the Fourteenth Amendment's guarantee of procedural due process. Cf. *Mildner v. Gulotta*, 405 F.Supp. 182 (E.D.N.Y.1975) (three-judge court), *aff'd* 425 U.S. 901, 96 S.Ct. 1489, 47 L.Ed.2d 751 (1976).

with the subpoena. Shortly thereafter, the composition of the Committee conducting the investigation was changed to insure that no member had any connection with prior proceedings concerning Mr. Gipson.

As a result of these developments, Mr. Gipson agreed to cooperate with the Committee. But when he appeared for a hearing on December 2, 1975, he produced only a small portion of the requested records. A further two-week extension was granted and Mr. Gibson agreed to comply with the subpoena. However, at the conclusion of the two week period he again failed to bring forward the subpoenaed documents.

At this juncture, the Chief of Central Ethics, a disciplinary officer with statewide authority, requested the New Jersey Supreme Court to suspend Mr. Gipson temporarily on account of his failure to produce the subpoenaed materials. The Supreme Court issued a rule to show cause on February 4, 1976. Mr. Gipson filed an affidavit with the Court, alleging that he was currently maintaining the required records. At oral argument before the Supreme Court, however, Mr. Gipson's attorney admitted that such records had not been kept by his client before December, 1975. But his counsel also stated that Mr. Gipson was attempting to reconstruct such records.

On March 12, 1976, the New Jersey Supreme Court temporarily suspended Mr. Gibson.[2] Its order provided, however, that the suspension would be lifted if Mr. Gibson supplied either the subpoenaed documents or an acceptable reconstruction of his financial records. At oral argument before this Court, we were informed that Mr. Gipson has yet to comply with the subpoena, and had not reconstructed his financial records. His attorney also conceded that at no point has Mr. Gipson petitioned the New Jersey Supreme Court to lift his temporary suspension on the ground that it is impossible for him to comply with the court order.

Following his suspension, Mr. Gipson commenced his federal court action. He sought, *inter alia,* a vacation of the suspension order. Since Mr. Gipson's complaint also challenged the constitutionality of the rules of attorney discipline of the State of New Jersey, a three-judge district court was convened.[3] On July 21, 1976, the suit was dismissed, the three-judge court ruling that its action was mandated by principles of federal non-interference.[4] This appeal followed,[5] and we now affirm.

## II.

Initially, we must confront the issue whether federal court non-interference is appropriate in litigation dealing with state attorney discipline.

The cases that provide the foundation for the non-interference doctrine have generally dealt with federal non-intrusion into pending state criminal prosecutions.[6] Recently, however, the Supreme Court has stated that these principles have applicability in certain civil contexts[7] as well.

Even prior to these later Supreme Court precedents, however, courts have declared that the field of state attorney discipline is one that is particularly well suited to the

2. The Supreme Court also denied a motion by Mr. Gipson to quash the subpoena.

3. Mr. Gipson's complaint was filed before the repeal of 28 U.S.C. § 2283. *See* P.L. 94–381 (August 12, 1976).

4. 416 F.Supp. 1129 (D.N.J.1976).

5. We have jurisdiction pursuant to 28 U.S.C. § 1291. *See MTM, Inc. v. Baxley,* 420 U.S. 799, 95 S.Ct. 1278, 43 L.Ed.2d 636 (1975).

6. *See, e. g., Kugler v. Helfant,* 421 U.S. 117, 95 S.Ct. 1524, 44 L.Ed.2d 15 (1975); *Younger v.*

*Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

7. *See Trainor v. Hernandez,* —— U.S. ——, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977); *Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977); *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975).

The Supreme Court has indicated that non-interference principles are not necessarily applicable across the full range of civil suits. *See Trainor v. Hernandez,* —— U.S. at ——, n. 8, 97 S.Ct. at 1919.

principle of federal court non-interference.[8] The traditional power of the state courts to establish standards for members of their bars and to discipline them, it has been argued, suggests that incursions by federal courts into ongoing disciplinary proceedings would be peculiarly disruptive of notions of comity.[9]

■ We find this argument to be persuasive. In view of the special relationship between state courts and members of their bars, we hold that the doctrine of federal non-interference is appropriate in suits concerning pending state attorney disciplinary proceedings.

### III.

The conclusion that the non-interference doctrine is applicable to pending attorney disciplinary matters, however, does not end our inquiry. This is so since Mr. Gipson has asserted that no state proceedings are pending and that the principle of non-interference is therefore inapposite.[10]

Essentially, Mr. Gipson urges that the only proceeding with which his federal suit might possibly interfere is the temporary suspension action. Yet, he continues, that cannot be deemed to be a pending proceeding since the New Jersey Supreme Court has adjudicated that matter, and has already meted out all sanctions. We cannot accept this argument.

■ First, we note that this position is not consistent with the breadth of Mr. Gipson's complaint and requested relief. Mr. Gipson has alleged that he is aggrieved not only by his suspension but also by the underlying investigation relating to his handling of client funds. In order to have his assertions vindicated, he seeks not only vacation of his suspension, but also a federal court ruling that the entire New Jersey attorney disciplinary mechanism is unconstitutional. Since the primary disciplinary matter clearly is still pending, it would appear that the total relief which Mr. Gipson has requested would indeed constitute an encroachment upon an ongoing state proceeding.

A conclusion that the suspension is the only proceeding upon which there could be federal court intrusion, however, would not change our decision. The reason for this is that we believe the question of Mr. Gipson's suspension is still pending in the state court. Although the New Jersey Supreme Court has stated what sanctions are to be imposed upon Mr. Gipson, such sanctions are of a continuing nature, much like a coercive contempt decree.[11] Mr. Gipson will be suspended only so long as he refuses to comply with the subpoena. For a federal district court to interfere with New Jersey's efforts to obtain Mr. Gipson's compliance with its disciplinary proceedings would constitute a serious invasion of a legitimate state function. This is especially so since Mr. Gipson has failed to take any substantial steps in the direction of compliance, and has not attempted to obtain in the state courts relief from his suspension on the ground that compliance is not feasible.

We have carefully considered all of Mr. Gipson's other contentions pertaining to the issue of federal court non-interference and find them to be without merit.

The judgment of the district court will therefore be affirmed.

---

8. *See Erdmann v. Stevens,* 458 F.2d 1205 (2d Cir., *cert. denied,* 409 U.S. 889, 93 S.Ct. 126, 34 L.Ed.2d 147 (1972). *See also Anonymous J. v. Bar Association of Erie County,* 515 F.2d 435 (2d Cir. 1975), *cert. denied,* 423 U.S. 840, 96 S.Ct. 71, 46 L.Ed.2d 60 (1976); *Anonymous v. Association of the Bar of City of New York,* 515 F.2d 427 (2d Cir. 1975), *cert. denied,* 423 U.S. 863, 96 S.Ct. 122, 46 L.Ed.2d 92 (1976).

9. *See Erdmann v. Stevens,* 458 F.2d 1205, 1208–10 (2d Cir.), *cert. denied,* 409 U.S. 889, 93 S.Ct. 126, 34 L.Ed.2d 147 (1972).

10. The Supreme Court has stated that non-interference principles have little force in the absence of a pending state proceeding. *See Steffel v. Thompson,* 415 U.S. 452, 461, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974); *Lake Carriers' Assn. v. MacMullan,* 406 U.S. 498, 509, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972).

11. *Cf. Latrobe Steel Co. v. United Steelworkers,* 545 F.2d 1336 (3d Cir. 1976).